Good morning. Good morning, Your Honors. Good morning, Judge Gould. Theodore J. Boutrous, Jr. representing the appellants Aguilera and Proximo. With the Court's permission, I'd like to reserve five minutes for rebuttal. Thank you. This Court, first and foremost, should reverse and order that this case be dismissed for lack of subject matter jurisdiction. The ticket into court that Gallo used to get into the U.S. Federal District Court was the Declaratory Judgment Act. And the basis for its seeking a declaratory judgment in the United States was the fact that a Mexican corporation, Hacienda, that is not a party to this case, sent a letter to another Mexican corporation, Tequila Supremo, asserting claims under Mexican trademark law concerning the 1800 tequila bottle. So no letters were sent by Gallo to Proximo or Aguilera or vice versa. There was no actual controversy, no controversy whatsoever between the parties to this case when the Declaratory Judgment Act was filed. Given the district court's findings that they all acted under the same set of owners or directors, and the group CUEVO, I believe, was a reference, is that not a proper consideration to determine whether or not there is some interest here of your clients? No, Your Honor. We respectfully submit it as not for several reasons. First, they were separate corporations. There was no alter ego finding or anything like that. The Mexican company, Hacienda, had the trademark rights to the 1800 bottle in Mexico. The Daimler v. Baumann decision from the Supreme Court, a personal jurisdiction case from this year, talked about how the fact that the corporate affiliates and subsidiaries' contacts in the United States weren't imputed to its sister corporation, a foreign corporation. And we have the same thing going on here with the jurisdictional finding, but on subject matter jurisdiction. And it creates many of the same problems, because in Mexico the ---- Isn't it really a jurisdictional issue or something else in terms of the elements to prove? It's a ---- I think, first and foremost, Your Honor, it's a jurisdictional issue, because we had a Mexican dispute occurring, and the Mexican courts resolved it. They found in favor of Hacienda that the 1800 bottle and the Camarena bottle were confusingly similar, and precluded use of that trademark, and the Camarena bottle was taken off the market. So we have really an advisory opinion from the district court here on summary judgment, which I'll get to, which was the court really treated it more like a bench trial, like your last case, made findings of fact. But here, like in Baumann, we had a Mexican dispute. There was no evidence that Proxima or Aguilera were intending to file an action in the United States under U.S. trademark law. There was no actual controversy. There was no controversy among them. So in Mexico was adjudicating and dealing with the issues, and did. But I'd like to be clear on the record here, and you can help me in this regard. Yes. Do you disagree? Does your client disagree with the factual findings concerning the structure of the various entities? No, Your Honor. We don't dispute that the companies were related and that Hacienda is part of the Cuervo family. We're not disputing that at all, but they're separate companies. And the district court, there are overlapping officers and directors, but there was no finding that there was any alter ego or anything like that. In the Baumann case, the Daimler case from the Supreme Court, very similar. There were closely related companies, but they're separate companies. And if you think of the implications of this in a global economy, where we have companies doing business around the world, they have affiliates in different jurisdictions, a dispute arises in Mexico between entities who aren't part of this case. And under Mexican law, that can't be enough to trigger a dispute under U.S. law between completely different entities. What about your counterclaim? How does that play into this? Well, it's kind of ironically, Your Honor, because once the motion to dismiss the declaratory judgment action was denied, Proximo and Aguilera had a choice. Could they now give up counterclaims they might otherwise have forever or assert them? So the way I look at it is, instead of bringing an actual controversy to the United States courts under U.S. law, Gallo provoked a controversy by forcing the hand of Aguilera and Proximo to file their counterclaims. Then, to make matters worse, the ticket that was used to get into Federal Court, the declaratory judgment action, was dismissed without prejudice. That was the way into court, Gallo's claim, but then the court dismissed that without prejudice, gave the ticket back to Gallo and said, you can maybe use it again to come into Federal Court, and then adjudicated on summary judgment the counterclaims that there's no evidence in the record Aguilera and Proximo ever intended to bring in the United States. So it's really a dangerous one. It would be a huge expansion of jurisdiction. We couldn't find a single case where a letter from a foreign company to another foreign company under foreign law, threatening disputes under foreign law, then was allowed to be used as the predicate for jurisdiction between completely different companies in the U.S. under U.S. law. The Prasco case from the Federal Circuit, the Creative Compounds case from the Federal Circuit, the Prasco case, the Prasco case, the Prasco case, the Prasco case, the   And so the Court, because of the configurations, demonstrate why that is not permissible Article III jurisdiction. There wasn't a controversy between these companies. Roberts. Let me ask you a question about the merits. Let's take as a given, I'll assume for the sake of discussion, that the 1800 bottle is distinctive. I look at the pictures, I see him sitting there on the table, the bottles just don't look that much alike to me, you know. And I'm wondering if how we say to Judge O'Neill that he was wrong in concluding that no reasonable person would think they're the same bottles. Several reasons, Your Honor. First, it wasn't a bench trial. And again, the bottles, they look they do look a lot like to me. So and they looked a lot to the Mexican courts who found that they were confusingly similar and denied protection to the Camarena bottle. And that's why the Camarena bottle that you see there is no longer on the market. So it's a jury question. In the sleek craft factors that were discussed in the last case, this Court has said are highly factual. The Court shouldn't weigh them altogether. That's for the jury. The and really this kind of demonstrates my point. The fact that counsel decided to put these on the table kind of proves my point. They want you to make a factual determination. Well, that's why I said that Judge O'Neill would have to have concluded that no reasonable person would think they are sufficiently similar. And, you know, I'll take a closer look at them. We can bring one up, Your Honor, if you like. No, I took judicial notice of them last night a couple of times, as a matter of fact. But, you know, I'm just looking at them. They just don't look that much alike to me. And I can see where Judge O'Neill might come to the same conclusion that nobody would think they look that much alike. If I could tag on to Judge Silverman's question. The record seems to indicate from the district court's findings here that your side didn't really contest the distinctiveness in its oppositions. Let me just address that point, because you, Judge Silverman, asserted that point. I'll start with that one. They did, in fact, contest distinctiveness. And, in fact, because there was a registered trademark in the United States, this really goes to Judge Silverman's point, too, that's incontestable. As to the bottle shape and the design of the bottle in the United States, that is, as a matter of law, means it's distinctive. Because to get a registered trademark, one must show its distinctive. But didn't you also have some unregistered trade dress? Yes. And our argument was that the registered trade dress, and our argument now is, is strong evidence on the unregistered trade dress, which has a broader component to it. And in the arguments in summary judgment, it wasn't broken out in a separate heading, but the first section was the mark is strong. And in that section, Proximo and Aguilera pointed out that it was a registered trademark, that Gallo had admitted, Gallo's executives during depositions admitted that it was distinctive. They say, well, that's not what he meant. That's for the jury. So the company argued that the image advertising with the bottle, you may have seen one last night if you were watching the basketball game with the bottle, featured more so than the famous actors, millions of dollars spent. That's a factor that is viewed as important by this Court in determining distinctiveness and likelihood of confusion. And in the billiard case, which we cited and relied on from this Court, the Court said that evidence that the design was copied, that the trade dress was copied, it could be determinative of secondary meaning. And here, it's powerful evidence that this was copied. Gallo thought it was distinctive. Their focus groups, while they were designing the bottle, people kept saying, gee, that looks like the 1800 bottle. They would have maybe disagreed with Judge Silverman on this. And the Gallo designers named the bottle type that this resulted in, 1800 number 3 bottle. Now, you may disagree with all of that if you were a juror, but that's a jury question. That's not something that can be decided on summary judgment. And now back to your point, Judge Silverman, that's a really nice array, but that's not how consumers see this in the market. On page 11, going to a factual dispute of our brief, we have photos taken by the investigator that my client sent out around the country to liquor stores. Good assignment, I guess. He took pictures of how the bottles were actually displayed. And if you look, the 1800 bottle jumps out at you. It looks different than all the bottles in the actual display. That's under this Court's decision in goto.com. You have to look at how the products are displayed to consumers. They're not displayed like this. That's how they displayed them to the district court. That's an impermissible mode of analysis. You have to look at how they're displayed in the market. And, again, as I said, the Mexican courts looked at this issue and decided that they were confusingly similar. And so I think that this is a jury question. And under the sleek craft factors, the district court really did treat it, if one reads the order and looks at the findings, the district court made factual findings. And unlike after a bench trial, that's not what's supposed to happen. Those are not subject to deference. The question was whether there were genuine issues of fact. And we believe under all those factors, three of them the district court found favored Aguevera and Proximo. So I start with that. Three to zero on the sleek craft factors. Are they in the same line of products? Yes. Tequila. Are they sold and displayed in similar channels of commerce? Yes. Liquor stores and bars. Are they, did Gallo enter into the market and expand its product line to compete with the 1800 line of tequila? And yes. So those, the judge found those were all in favor of my clients. Another factor that the court didn't really look at was whether the consumers were making really careful decisions, which if they weren't means it's more likely to be confusing. And here we're talking about people who are drinking tequila. They're in bars. It's not that expensive a product. And so that favors our side. So that's four of the sleek craft factors. So that leaves four more. Similarity, as I mentioned, we have, they had their survey on actual confusion. But we had Gallo focus groups where we had Gallo people questioning individuals about bottles of tequila. And they said the 1800 number three bottle looks a lot like the 1800 bottle. We had them name the bottle type 1800 number three. And they clearly were engaged in copying to some degree. They recognized it was distinctive. And that under sleek craft, intent to copy, which was a whole section in the summary judgment brief, is one form of evidence of similarity, of likelihood of confusion. We also have, in terms of distinctiveness, again, I think the district court made a mistake on the distinctiveness point because it assumed that for Aguevera and Proximo to make a trademark, a trade dress infringement claim, it needed to show, it needed to argue that every single element of the Camarena bottle was, was violative of the trademark. And it focused on the shot glass in the registered trademark. But this Court, again, in the Clicks Billiard case, I think said it very clearly that you look at the overall impression of the product in the marketplace. And here the company spent millions, $7 to $8 million in 2010 alone, to advertise the image of this bottle so people would say, oh, that's 1800 tequila. And it's that overall impression. And the way the Court put it in Click Billiards, quoting the McCarthy treatises, the issue is not whether defendant's package or trade dress is identical to plaintiff's in each and every particular, rather it's the similarity of the total overall impression that is to be tested. And that, the district court, I think, committed legal error on that issue when it said, well, they don't have the glass bottle top, so that the registered trademark is meaningless. That's legal error. So this was really highly factual, as this Court has said over and over again. And the district court impermissibly made factual findings that were precluded on the summary judgment standard. And the Court should either dismiss this case for lack of jurisdiction, because it was, had never come to a controversy, let alone an actual controversy among these companies, or it should reverse the summary judgment order so a jury can hear these claims and decide the facts under the proper standards. Is the key issue here really over the district court's finding that there was no likelihood of confusion, as opposed to your argument that, well, that's a factual issue that really should merit a trial to resolve some of the conflicting evidence that you say from their survey and then from your focus group work? Is that really, if we assume jurisdiction findings are correct, and all the other points raised would still affirm the district court's opinion, and all that's left is the no likelihood of confusion finding, what is left for trial, if we say go back to trial? That would be it, Your Honor. Likelihood of confusion, and the jury would hear the evidence, look at the bottles, would hear, look at how they were displayed in the super, in the markets, in the liquor stores, hear the evidence that Gallo's executives said, this is distinctive, that the Gallo designers called it the 1800 number three bottle. They would hear the evidence that the focus groups of Gallo thought their design looked like the 1800 bottle, that the evidence that Gallo copied, that the design, that 1800 really focuses on its image of the bottle, and they could look at the picture and look at these bottles and say, yeah, that jumps out at me, it's distinctive, it's confusing. I'll reserve the rest of my time. Sure. Thanks, Mr. McGinn. I'm sorry for the noise here. It's okay. Good morning, Your Honors. May it please the Court, Peter Harvey on behalf of the Gallo parties. Mr. Harvey, if you could keep your voice up a little louder than usual because of all this construction, I'd appreciate it. Yes. I will try to do that. So there are really three issues on this appeal that this Court needs to consider. One is jurisdiction. One is the issue of likelihood of confusion. And the last is our cross appeal on the appropriateness of fees to be awarded here, where the magistrate judge recommended almost a million dollars in fees to Gallo because the case was groundless. I'm going to start with the likelihood of confusion case because it seems to have the most attention of the Court. And let me just speak specifically to the intent and copying evidence that we've just heard about to try to put it in context. What's striking here is what's not in the record with respect to confusion, what's not here. There is no evidence of actual confusion. There is no evidence of actual confusion whatsoever in this record. That's the main point. A million bottles of the slant-sided Camarena were sold in this country without a single instance of a consumer coming back and saying he got the wrong thing. That is the marketplace speaking to likelihood of confusion. The second point is that Gallo did a survey by a very well-recognized survey expert. And the findings of that survey, Dr. Ford's survey, was less than half of 1% of the people who were shown this bottle said it looks like or is made by Camarena. I'm sorry, by Cuervo or by 1800. So there's no ‑‑ that's the evidence that Gallo put in. In opposition to that, what do we hear from Cuervo on actual confusion? Nothing. No survey, no evidence offered with respect to likelihood of confusion. Their focus group argument, can you address that? Yes. The focus group arguments are actually telling because if one parses the record carefully, there are four comments, four comments out of hundreds and hundreds of comments by the focus group members that say it reminds me of the 1800. This particular bottle that they were looking at was not the one that Gallo ended up using. But the prototype was reminding them of the 1800. You take the four and you match it against the 400 that were actually in the focus groups. That matches up nicely with that 1% that our survey expert found. So one can put aside this kind of claimed evidence of copying because there really isn't any. The other evidence mentioned, the reference to 1800 comma number sign three is one document which references the A shape, the A frame bottles that were under consideration and the B format. And a certainly permissible interpretation of that on its face is the 1800 has a slanted side and the number three bottle that Gallo was considering has a slanted side. It doesn't say that Gallo named the bottle 1800. If that had been the case, it would have been all over the records. And this is the one document they could find. Could you talk, unless other questions on the likelihood of success issue, could you talk a little bit about the impact of the, I guess, the order in which the claim, your claim was dismissed without prejudice and the impact that has on the later proceedings? Thank you. Your Honor, that's the Rule 41 argument. The problem with that argument is, well, twofold. One, no court has read action to mean the entire action under 41, the way that the appellants would ask this court to read it. Instead, it's been read to mean all the claims against a single party, which is the way Judge O'Neill read it here. And secondly, the notion that you've just succeeded on summary judgment and the judge would therefore intend to dismiss the entire case and retry it, it doesn't make any sense at all. Rule 41 talks about dismissal on terms that the court deems just, and clearly Judge O'Neill did not intend that. They stipulated to this dismissal and for them now to come in and say, oh, gotcha, because you've now dismissed the entire case, strikes us as rather disingenuous. So that deals with the intent question, I think, with respect to other issues that were raised by Mr. Boutros in his argument. Clicks billiards, he relies heavily on clicks. If one reads clicks billiards, now that is a case where there was real evidence of copying. It's a billiards case, and the defendant's personnel were actually going into clicks and making measurements and comparing materials and referring to themselves as clicks west, that's the sharpshooters guys. Well, that's evidence of intent to copy. We don't have anything close to that here. We have, at best, some random comments and focus groups observing similarities. So I don't think clicks helps at all. In fact, if anything, it confirms the kind of evidence that one needs to overturn a summary judgment in a case like this. As far as the investigator's picture, we took his deposition. He admitted he was not an expert. He visited 11 stores randomly, and he took a picture. That doesn't say much about how the tequilas are marketed across the United States. And, in fact, in some stores, this is the way they appear. As far as the sleek craft factors are concerned, I heard Mr. Boutros counting three in his favor. But, as this Court well knows, under DreamWorks, as Judge Kaczynski said, we don't count beans when we do sleek craft. And it's not about how many, but rather these are suggestive elements, ways to assess evidence. And here, where you have very, very dissimilar total trade dress, so the marks are different, you have very different brands, so you have Camarena and you have 1800. You have no evidence of actual confusion. It's highly appropriate under these circumstances for the court to grant summary judgment. Let me just touch on distinctiveness for a minute. What's really involved here at the bottom is this. This is just slanted sides. That's the only common element here. And it's very clear from, as you saw on page two of our brief, our so-called crowded field array. There are some 18 to 20 brands on that picture that illustrate that many tequila makers chose to use slanted sides. And there's a good reason for that. I mean, apart from the fact that this is a Mexican product, it's referencing, among other things, the Mexican origins of tequila. So for all these reasons, we say Judge O'Neill got it completely right. And if the Court wishes to hear on the jurisdiction points, I'm happy to address those, or to reserve on my fees cross-appeal. Was there a need to make an alter ego finding, or was it really actually done when, if the facts are as presented, uncontested, and it's simply a legal interpretation of those facts? It's the latter, Your Honor. There's no need for alter ego here. And the reliance on the Daimler case is misplaced. The Daimler was a quite different situation, where a subsidiary of Daimler in Argentina had claims asserted against it that were trying to be brought in the United States. And the court in the Daimler case said there's no U.S. nexus at all. Here, much different situation. The effect of cutting off the supply of Gallo's new Camarena tequila would only have effect here. Only U.S. consumers could be confused because the tequila was only going to be sold here. And so you're absolutely right, Your Honor. It fits with respect to the factual findings, and the factual findings here, they don't question. Mr. Harvey, as long as you have the floor, would you tell us what you want to say about your appeal? Yes, on our appeal, I mean, it's very simple. Octane Fitness has really changed the game on what an exceptional case means. Just decided a couple of weeks ago, it's the Patent Act, but it's the identical language in the Lanham Act, that is to say what is an exceptional case. And under the standard with respect to what exceptional case means, we believe we have evidence and obviously in the record as to why we qualify for that and why the magistrate judge here felt very comfortable awarding Gallo nearly a million dollars in fees. The new definition of what an exceptional case is is something that stands out, a case that stands out from the others, either by reason of the weakness of the litigants' position or the techniques and tactics that were used in prosecuting the case. And we really have no fear. There was no evidence submitted with respect to distinctiveness. Judge Lamel is completely right, and Judge O'Neill observed that. We had five pages in our brief with respect to distinctiveness and nothing in the opposing brief. So there was a groundless case, and then there were shenanigans that were played, and I don't want to bore the Court with too many details, but declarations regarding the knowledge of Mr. Avena, who was the attorney in fact for Hacienda, saying he disclaimed any knowledge on behalf of Aguevera of this letter. Well, he was not just the attorney in fact of Hacienda, but also of Aguevera. He didn't just be aware of the letter. He wrote the letter. He initialed it, and the secretary of both entities signed it.  But don't the district court here reverse the magistrate's fees not in the title because there were debatable issues of fact and law here in a rather, in my viewpoint, convoluted set of proceedings here. Shouldn't that be given some deference? Even though we – even though I might look at it in a different way, it's debatable. Isn't that not the basis for saying it's not an exceptional case? Well, one gives deference to the district judge and should, but the test has changed, and so I think Judge O'Neill should be given an opportunity to reexamine what he did under the new octane fitness test, Your Honor. All right. Thank you. Thank you. Thank you. Mr. Boutrous. Thank you, Your Honors. Let me first on the jurisdictional question. This, again, I want to emphasize, there was no controversy among these parties. And it's not fair to have a declaratory judgment action brought against defendants who never set a peep to Gallo, never threatened to sue them in the United States based on things that were happening in Mexico. The tequila was bottled, produced in Mexico. There was a dispute between Mexican companies. Then to have summary judgment granted basically where the judge makes factual findings, and then to allow the plaintiff who started the whole controversy to pull the rug out from under the defendants and leave them standing there with a judgment that's inconsistent with what the Mexican courts decided, which was that those bottles were confusingly similar. And I might add on that point, there are different sizes of the bottles. So this is, again, a very misleading made-for-the-Ninth-Circuit array of Camarena and 1800 bottles. So, again, those would be jury questions. And the arguments that we just heard, again, were jury arguments. The investigator for Aguevera and Proximo went around and took pictures, and there was no dispute that he took pictures of how the tequila bottles were displayed. And none of them had a bunch of bottles like that. None of them had any that looked like the 1800 bottle except the Camarena bottle. And counsel just said, well, they were displayed like this. There's no evidence in the record. And he cited none. So he's now arguing evidence that's not in the record. That should all we're asking for is either vacate what is an advisory opinion or let the company have a trial before a jury under sleepcraft. It's not bean counting, as Judge Kaczynski and others have said. It's a factual inquiry that involves balancing the various factors. So the fact that three or four factors favor us, I'm not saying we win, that you just count them up, but they're supposed to be weighed together in a factual way. And where the district court went wrong was it made factual findings. It said, I don't think these are similar. I don't think there's a likelihood of confusion. Those are factual issues, and there was disputed facts on all of those issues. With respect to the intent to copy, the record, again, that was just a jury argument. Gallo's designers used the label 1800 No. 3. Their focus group members said, this reminds me of the 1800 bottle, and why that's significant. And again, Clicks Billiards says this, is it's indicative of the fact that the Gallo designers knew there was a distinctive product that had secondary meaning and considered using it to model their bottle off of. Survey evidence is not required. This Court has said that over and over again. The focus group evidence and the evidence from Gallo's own designers is as good of actual confusion evidence as the survey evidence. It wasn't just the trade dress is not simply slanted sides. It's the trade dress that was registered with and is incontestable as a distinctive trade dress. It's the trapezoidal bottle with the 1800 ratios and measurements. And I got that term, 1800 ratios, in part from Gallo. That's what their records called it. It's the measurements that made it look that shape. And that is distinctive, and it's a jury question whether that would be confusing. In footnote 14 of our reply brief, we compare the ratios between the two, the Camarena and the 1800 bottle. With respect to the attorney's fee issue, the district court applied virtually the same standard that Octane adopted. It looked at multiple factors the whole course of the litigation. If I may just finish my thought on this, thank you. And it looked at the nature of the arguments, the evidence, the litigation conduct. It looked at the whole mix and made a determination that this was not an exceptional case. It did not stand out. I think he even used those words. And the other case the Supreme Court decided the same day as Octane was the Highmark case, which said that those decisions are discretionary by district judges and they must be deferred to. And on that one, this Court must defer to the district court's decision that this was not a case for attorney's fees. Thank you very much. Thank you. Thank you, Judge Gould. Mr. Harvey, did you want to reply limited only to the attorney's fees, or you don't have to if you don't want to? I have to. Okay. Well, the case just argued and very well is submitted. We especially appreciate your good nature with the construction. You guys are real pros to put up with that. Thank you. Thank you.
judges: Lemelle, Silverman, Gould